**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | |
|---|---|
| **GREG OLIVER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:13-CV-1947-VEH** |
| | ) |
| **AETNA LIFE INSURANCE** | ) |
| **COMPANY, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

---

**<u>MEMORANDUM OPINION</u>**

**I.      INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Gregory Oliver ("Mr. Oliver"), a former employee of Federal Express

Corporation ("FedEx"), initiated this employee benefits case in the Circuit Court of

Etowah County, Alabama, on September 11, 2013. (Doc. 1-1 at 4).[1] On October 22,

2013, Defendant Aetna Life Insurance Company ("Aetna") removed the lawsuit to

this court on the basis of federal question jurisdiction under the Employee Retirement

Income Security Act ("ERISA") and the doctrine of complete preemption. (Doc. 1 at

2-3 ¶¶ 6, 7). On November 26, 2013, Mr. Oliver filed an amended complaint which

---

[1]  All page references to Doc. 1-1 correspond with the court's CM/ECF numbering system.

added Federal Express Corporation Long Term Disability Plan (the "FedEx Plan") as a co-defendant to his lawsuit. (Doc. 10 at 1).

Currently pending before the court are the six following contested motions:

(1)     Mr. Oliver's Motion for Summary Judgment on Appropriate Standard of Review (Doc. 20) (the "SOR Motion") filed on June 13, 2014;

(2)     Mr. Oliver's Motion for Judgment for Total Disability (Doc. 28) (the "Disability Motion") filed on July 3, 2014;

(3)     Defendants' Motion For Summary Judgment (Doc. 31) (the "Cross Disability Motion") filed on July 3, 2014;

(4)     Mr. Oliver's Motion To Add Documents to the Claim File (Doc. 25) (the "Motion To Add") filed on July 3, 2014;

(5)     Mr. Oliver's Motion To Strike (Doc. 40) (the "Strike Motion") filed on July 3, 2014; and

(6)     Mr. Oliver's Motion To Compel Log of Omitted Documents from the Administrative Record (Doc. 49) (the "Compel Motion") filed on August 29, 2014.

The court has studied all these filings as well as the parties' respective supporting and opposing materials. (Docs. 23, 26-27, 29-30, 32-39, 41-44, 51). For the reasons explained below, (1) Mr. Oliver's SOR Motion is due to be denied; (2)

Mr. Oliver's Disability Motion is due to be denied; (3) Defendants' Cross Disability Motion is due to be granted; (4) Mr. Oliver's Motion To Add is due to be denied and alternatively is due to be termed as moot; (5) Mr. Oliver's Strike Motion is due to be termed as moot; and (6) Mr. Oliver's Compel Motion is due to be denied.

## II.    FACTUAL BACKGROUND AND ADMINISTRATIVE HISTORY[2]

Mr. Oliver formerly worked as courier for FedEx. Mr. Oliver experienced an on-the-job injury on August 15, 2009, and has the impairments of degenerative disc disease and osteoarthritis in the left knee. Mr. Oliver submitted a disability claim under the FedEx Plan, and received short-term disability benefits for the time period of August 24, 2009, through February 21, 2010. (Doc. 23-1 at 2).[3] Subsequently, Mr. Oliver received long-term <u>occupational</u> disability benefits under the FedEx Plan for the two-year period of February 22, 2010, through February 21, 2012. *Id.* This provided Mr. Oliver with the maximum coverage for long-term occupational

---

[2]   Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[3]   All page references to Doc. 23-1 correspond with the court's CM/ECF numbering system.

disability, as the FedEx Plan places a 24-month cap on receiving that type of benefit. (Doc. 23-7 at 50; Doc. 23-1 at 2).

Prior to the exhaustion of his long-term occupational disability payments, on August 25, 2011, Aetna sent Mr. Oliver a letter which explained the more demanding definition of disability that applied to long-term benefits "beyond 24 months . . . ." (Doc. 23-2 at 4).[4] More specifically, that standard requires a claimant to show a "complete inability . . . to engage in any compensable employment for twenty-five hours per week." (Doc. 23-1 at 2; Doc. 23-7 at 42).

Mr. Oliver sought to qualify for long-term total disability benefits to cover the time period from February 22, 2012, to the present. (Doc. 23-1 at 2). This claim was denied initially on January 12, 2012, and Mr. Oliver filed an appeal. *Id.* Subsequently, on March 13, 2012, Linda Bizzarro ("Ms. Bizzarro") sent a letter to Mr. Oliver on behalf of the Aetna Appeal Review Committee ("AARC") (Doc. 23-1 at 2-3), notifying him that the AARC had denied his appeal on March 12, 2012, "because there [wa]s a lack of significant objective findings to substantiate a claim under the Plan for Total Disability." (Doc. 23-1 at 3).

Before his long-term total disability claim was finally decided, Mr. Oliver

---

[4] All page references to Doc. 23-2 correspond with the court's CM/ECF numbering system.

received a favorable disability decision from the Social Security Administration ("SSA") on January 17, 2012 (Doc. 23-2 at 8-21), which concluded that Mr. Oliver became disabled (within the meaning of the Social Security Act) on August 15, 2009, the same date as his job-related injury. Mr. Oliver contends that this SSA decision satisfies the total disability standard under the FedEx Plan and that "[t]he medical record reviewers were never provided [with a copy of it]." (Doc. 28 at 2).

The record reflects that Aetna received notice of Mr. Oliver's favorable SSA decision (indicating a retroactive benefit amount of $28,334.00) sent via facsimile on February 28, 2012, by a nonparty entity named Allsup. (Doc. 23-2 at 23-32). Further, the appeal denial letter expressly references the AARC's consideration of Mr. Oliver's favorable SSA award. However, the AARC ultimately discounted its evidentiary importance. Specifically, the AARC pointed out that "the criteria utilized by the Social Security Administration for . . . disability awards are different from the definition for Total Disability set forth in the Plan," and underscored its "duty to follow the terms of the Plan." (Doc. 23-1 at 3).

## III.   STANDARDS

### A.   Summary Judgment

Summary judgment is proper only when there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).[5] All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).[6] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec.*

---

[5] Although this matter is before the court on cross motions for summary judgment pursuant to Rule 56, the Eleventh Circuit has expressed that, due to the peculiar standards of review for ERISA cases, traditional Rule 56 practice may be unnecessary. *See Doyle v. Liberty Life Assur. Co.*, 542 F.3d 1352, 1363 n.5 (11th Cir. 2008). Other decisions rendered within this circuit have similarly recognized that the summary judgment standard is not appropriate in ERISA cases when "the district court sits more as an appellate tribunal than as a trial court." *Curran v. Kemper Nat. Servs. Inc.*, No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17–18 (1st Cir. 2002)); *see Ruple v. Hartford Life & Accident Ins. Co.*, 340 F. App'x 604, 611 (11th Cir. 2009) ("[The] typical summary judgment analysis does not apply to ERISA cases."); *Providence v. Hartford Life & Accident Ins. Co.*, 357 F. Supp. 2d 1341, 1342 n.1 (M.D. Fla. 2005) ("[T]he Court's task is to review the benefit decision based on the administrative record available to the decision maker at the time he or she made the decision.").

[6] Rule 56 was amended in 2007 in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)). Although there are cross motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955) ("Both parties filed and argued motions for summary judgment, but this does not warrant the granting of either motion if the record reflects a genuine issue of fact.").[7] The court will consider each motion independently, and in accordance with the Rule 56 standard. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 994, 8 L. Ed. 2d 176  (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion."). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." Wright, Miller & Kane, Fed. Practice & Proc. § 2720, at 327-28 (3d ed. 1998).

Finally "[i]f the movant bears the burden of proof on an issue, because, as a

---

[7]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d at 1274 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

### B.   Discovery Rulings

Regarding discovery rulings:

> A district court has wide discretion in discovery matters and our review is "accordingly deferential." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). A court abuses its discretion if it makes a "clear error of judgment" or applies an incorrect legal standard. *Carpenter v. Mohawk Indus., Inc.*, 541 F.3d 1048, 1055 (11th Cir. 2008) (per curiam). Moreover, a district court's denial of additional discovery must result in substantial harm to a party's case in order to establish an abuse of discretion. *See Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210, 1219 (11th Cir. 2000).

*Bradley v. King*, 556 F.3d 1225, 1229 (11th Cir. 2009); *accord Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) ("Moreover, we will not overturn discovery rulings 'unless it is shown that the District Court's ruling resulted in substantial harm to the appellant's case.'" (quoting *Carmical v. Bell Helicopter Textron, Inc.*, 117 F.3d 490, 493 (11th Cir. 1997))).

### C.   Evidentiary Rulings

"All evidentiary decisions are reviewed under an abuse-of-discretion standard."

*See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S. Ct. 512, 517, 139 L. Ed. 2d 508 (1997). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 F. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Moreover, as the Eleventh Circuit has made clear, not every incorrect evidentiary ruling constitutes reversible error:

> Auto-Owners' second argument is that it is entitled to a new trial on the basis of what it describes as a number of erroneous evidentiary rulings by the district court. Evidentiary rulings are also reviewed under an abuse of discretion standard. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989). Moreover, even if Auto-Owners can show that certain errors were committed, the errors must have affected "substantial rights" in order to provide the basis for a new trial. *See* Fed. R. Evid. 103(a). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry*, 734 F.2d at 1446. *See also Allstate Insurance Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988).

*Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993). Therefore, even the existence of many evidentiary errors does not guarantee the party appealing a new trial. Instead, such erroneous rulings by a district court must "affect the substantial rights of the parties" for reversible error to occur.

## IV.   ANALYSIS

### A.   Overriding Principles Governing ERISA Benefits

ERISA does not contain a standard of review for actions brought under § 1132(a)(1)(B) challenging benefit eligibility determinations. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108-09, 109 S. Ct. 948, 953 (1989) ("Although it is a 'comprehensive and reticulated statute,' ERISA does not set out the appropriate standard of review for actions . . . challenging benefit eligibility determinations.").[8] Moreover, the case law that has developed over time governing such standards has significantly evolved. A history of the transformation of these principles is useful to understanding the presently applicable framework for evaluating § 1132(a)(1)(B) ERISA challenges.

In *Firestone*, the Supreme Court initially established three distinct standards for courts to employ when reviewing an ERISA plan administrator's benefits

---

[8] ERISA provides "a panoply of remedial devices" for participants and beneficiaries of qualifying benefit plans. *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Mr. Oliver asserts that he is entitled to certain long-term disability benefits as a participant under the FedEx Plan based on § 1132(a)(1)(B). "That provision allows a suit to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement to benefits under the provisions of the plan contract." *Firestone Tire*, 489 U.S. at 108. The following analysis, therefore, is limited to the appropriate standard of review in § 1132(a)(1)(B) lawsuits challenging benefit denials based on plan interpretations; the court does not address the appropriate standard of review for actions arising under any other remedial provisions of ERISA.

decision: "(1) *de novo* where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where the plan grants the administrator discretion and the administrator has a conflict of interest." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010) (citing *Buckley v. Metro. Life*, 115 F.3d 936, 939 (11th Cir. 1997) (discussing *Firestone*, 489 U.S. at 115)). In *Williams v. Bellsouth Telecomms., Inc.*, 373 F.3d 1132, 1137 (11th Cir. 2004), *overruled on other grounds by Doyle v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008), the Eleventh Circuit fleshed out the *Firestone* test into a six-step framework designed to guide courts in evaluating a plan administrator's benefits decision in ERISA actions. When the Eleventh Circuit created the *Williams* test, the sixth step of the sequential framework required courts reviewing a plan administrator's decision to apply a heightened arbitrary and capricious standard if the plan administrator operated under a conflict of interest. *See id.* The Eleventh Circuit later modified this step in response to the Supreme Court's ruling in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105, 115-17 (2008), which concluded that a conflict of interest should be weighed merely as "one factor" in determining whether an administrator abused its discretion. *See Doyle v. Liberty Life Assur. Co. of Boston,* 542 F.3d 1352, 1359 (11th Cir. 2008)

("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision.").

The Eleventh Circuit's latest iteration of the *Firestone* standard-of-review framework is found in *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350 (11th Cir.), *cert. denied*, 132 S. Ct. 849 (2011):

(1)  Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)  If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)  If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)  If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)  If there is no conflict, then end the inquiry and affirm the decision.

(6)  If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Id.* at 1355.[9] All steps of the analysis are "potentially at issue" when a plan vests discretion to the plan administrator to make benefits determinations. *See id.* at 1356 n.7. Conversely, then, where a plan does *not* confer discretion, the court simply applies the *de novo* review standard established by the Supreme Court in *Firestone*. *See Firestone*, 489 U.S. at 115 ("[W]e hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").

## B.   Mr. Oliver's SOR Motion is due to be denied.

In this case, the parties dispute the appropriate standard of review for this court to apply.[10] In his SOR Motion, Mr. Oliver asserts that *de novo* review is called for,

---

[9]  "In ERISA cases, the phrases 'arbitrary and capricious' and 'abuse of discretion' are used interchangeably." *Blankenship*, 644 F.3d at 1355 n.5.

[10]  The answer to which standard applies carries great significance in relation to the scope of this court's evidentiary review.  On one hand, if the *de novo* standard applies because of an absence of discretionary authority, then the court is not limited in its review to simply those facts that were before the administrator at the time of the decision. *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994) ("In this circuit, a district court conducting a *de novo* review of an Administrator's benefits determination is not limited to the facts available to the Administrator at the time of the determination."). On the other hand, if the arbitrary and capricious standard applies, triggering application of the six-step analysis discussed above, then the court is limited in its review to the facts available to the administrator at the time of the determination. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246-47 (11th Cir. 2008) (stating, in a case where the claims administrator had discretion under the plan, that when evaluating whether the claims administrator's decision was wrong, "[w]e are limited to the record that was before [the claims administrator] when it made its decision").

while Defendants maintain that discretionary or arbitrary and capricious review is required.[11] Based upon the record in this case, the court sides with Defendants.

While Mr. Oliver bears the burden of proving his entitlement to ERISA benefits under the FedEx Plan, *Horton v. Reliance Std. Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998), Defendants "bear[] the burden of proving that the arbitrary and capricious standard of review applies." *Anderson v. Unum Life Ins. Co. of Am.*, 414 F. Supp. 2d 1079, 1095 (M.D. Ala. 2006) (citing *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)). After evaluating the substance of each plan document upon which Defendants rely, and as discussed more fully below, the court finds that Defendants have met their burden of demonstrating that arbitrary and capricious review is proper. Accordingly, Mr. Oliver's SOR Motion is due to be denied.

As the Eleventh Circuit explained in *Jett v. Blue Cross and Blue Shield of Ala., Inc.*, 890 F.2d 1137 (11th Cir. 1989), regarding the *de novo* versus abuse of discretion distinction:

> The recent Supreme Court case which holds that a *de novo* standard of review is proper under some plans validates the prior law of this Circuit

---

[11]  As a result of the Supreme Court's decision in *Glenn*, as interpreted by the Eleventh Circuit in *Doyle*, only two ERISA standards of review now exist in the context of challenging a plan administrator's claim decision—either *de novo* or modified arbitrary and capricious. *Doyle*, 542 F.3d at 1359 ("As we now show, *Glenn* implicitly overrules and conflicts with our precedent requiring courts to review under the heightened standard a conflicted administrator's benefits decision.").

that the arbitrary and capricious standard of review is appropriate here. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). The [C]ourt held that

> a denial of benefits challenged under [29 U.S.C.A.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard <u>unless the benefit plan gives the administrator or fiduciary</u> <u>discretionary authority to determine eligibility for benefits</u> <u>or to construe the terms of the plan.</u>

*Firestone*, 109 S. Ct. at 956.

> <u>The plan in this case does give the administrator of the plan</u> <u>"discretionary authority</u> to determine eligibility for benefits [and] to construe the [plan's] terms." *Id*. For example, <u>the plan states,</u>

> > As a condition precedent to coverage, it is agreed that whenever <u>the Claims Administrator makes reasonable</u> <u>determinations   in   the   administration   of   the   [plan]</u> <u>(including,   without   limitation,   determinations   whether</u> <u>services,   care,   treatment,   or   supplies   are   Medically</u> <u>Necessary . . .) such determinations shall be final and</u> <u>conclusive.</u>

*Jett*, 890 F.2d at 1138-39 (emphasis added). Therefore, in *Jett*, the court first looked

to the language of the plan in order to evaluate the standard of review issue.[12] *Cf.*

*Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997) ("Accordingly, <u>we look to all</u>

<u>of the plan documents</u> to determine whether the plan affords the Fund enough

---

[12] In *Jett*, the parties agreed that the arbitrary and capricious standard of review applied.  *Id.* at 1138 ("The parties agree that a court reviewing Blue Cross' denial of benefits under this plan must apply an arbitrary and capricious standard.").

discretion to make the arbitrariness standard applicable.") (emphasis added).

Article 1 (*i.e.*, the "DEFINITIONS" section) of the FedEx Plan, as amended and restated effective June 1, 2006 (the "2006 Restated FedEx Plan") (Doc. 23-7 at 27),[13] defines the terms "Company" as "Federal Express Corporation" (Doc. 23-7 at 30); "Administrator" as "the Company, which is charged with the administration of the Plan, acting through its Employee Benefits Department" (*id.* at 31); and "Claims Paying Administrator" as "Aetna Life Insurance Company or any other entity or person designated as such by the Company." (*id.* at 32).

Under the 2006 Restated FedEx Plan, "[t]he Administrator shall appoint an appeal committee for the purposes of conducting reviews of denial of benefits and providing the claimant with written notice of the decision reached by such committee." (Doc. 23-7 at 78). The Appeal Committee is the entity responsible for reviewing claims decided by the Claims Paying Administrator that are challenged by a claimant and for issuing "a timely decision in writing [to that person] following its review." (Doc. 23-7 at 79).

Concerning discretionary authority, the 2006 Restated FedEx Plan contains the following relevant provisions:

---

[13] All page references to Doc. 23-7 correspond with the court's CM/ECF numbering system.

<u>Authority of Appeal Committee</u>. The appeal committee, appointed pursuant to Subsection (c), shall, subject to the requirements of the Code and ERISA, be empowered to interpret the Plan's provisions in its sole and exclusive discretion in accordance with its terms with respect to all matters properly brought before it pursuant to this Section 5.3, including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan. <u>The determination of the appeal committee</u> shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision, <u>shall be final, subject only to a determination by a court of competent jurisdiction that the committee's decision was arbitrary and capricious</u>.

(Doc. 23-7 at 81-82 (emphasis added)).

Article 6 (*i.e.*, the "ADMINISTRATION OF PLAN" section) of the 2006 Restated FedEx Plan provides similar discretionary powers to the Administrator. (*See* Doc. 23-7 at 88 ("<u>The determination of the Administrator</u> shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision, <u>shall be final, subject only to a determination by a court of competent jurisdiction that the committee's decision was arbitrary and capricious</u>.") (emphasis added)).

Finally, Article 6 identifies a "Committee" that "shall be appointed by the board of directors of FedEx Corporation to perform the administrative duties hereunder other than the administration of claims which is the responsibility of the Administrator and Claims Paying Administrator to the extent such duties are delegated to it by the Administrator." (Doc. 23-7 at 88). The 2006 Restated FedEx

Plan purports to give the Committee discretionary authority. (*See* Doc. 23-7 at 89

("The determination of the Committee shall be made in a fair and consistent manner

in accordance with the Plan's terms and its decision, shall be final, subject only to a

determination by a court of competent jurisdiction that the [Committee]'s decision

was arbitrary and capricious.") (emphasis added)).[14]

Thus, the 2006 Restated FedEx Plan bestows the Administrator, Appeal

Committee, and the Committee with discretionary authority when a decision is made

by that particular defined body. Defendants have not pointed to nor has the court has

been able to locate where the specific provisions of the 2006 Restated FedEx Plan

gives discretionary authority to any other entity besides these three.

Defendants assert that the Committee referenced in Section 6.2 of the 2006

Restated Plan is the Retirement Plan Investment Board ("RPIB"). (Doc. 26 at 6 ¶ 1).

Defendants also maintain that there is no group expressly designated as the "Appeal

Committee." (*Id.* at 5 ¶ 5). Defendants instead represent that, prior to September 21,

2008, long-term disability appeals were decided by the Federal Express Corporation

Benefit Review Committee ("BRC"). (*Id.* at 6 ¶ 3). These representations are

substantiated by several documents contained in the record, including an inter-office

---

[14] The alteration of "Committee" replaces the apparent typographical error of "Administrator" that actually appears in the 2006 Restated Plan. (Doc. 23-7 at 89).

memo dated June 12, 2008, in which August C. Lauer, Managing Director of Disability, Work/Life & HCMP recommended that long-term disability appeals be outsourced to Aetna and that the BRC be eliminated (Doc. 27-1 at 2),[15] and the July 14, 2008, minutes of the RPIB meeting in which the RPIB voted to approve the recommendation "to outsource remaining long-term disability appeals effective September 1, 2008, and effectively cease the operation of the [BRC]." (Doc. 27-3 at 3).

Mr. Oliver does not dispute that the 2006 Restated FedEx Plan unambiguously vests discretion in various entities formed by FedEx to interpret terms and make final long-term disability benefits determinations, but instead argues that such discretionary authority does not extend to the adverse appellate benefits determination rendered by the AARC on March 12, 2012, mailed to him on March 13, 2012, and made effective as of February 22, 2012. (Doc. 23-1 at 2-3). Defendants counter that a subsequent amendment to the 2006 Restated Plan (as well as other documents) make it clear that the AARC had discretionary authority in its appellate role over Mr. Oliver's long-term disability claim, which was finally denied on March 12, 2012.

---

[15]  All page references to Doc. 27-1 correspond with the court's CM/ECF numbering system.

Article 7 of the 2006 Restated FedEx Plan governs "AMENDMENT AND TERMINATION" procedures. (Doc. 23-7 at 91). Section 7.1 specifically addresses amendments and provides in relevant part that:

> The Sponsoring Employers shall have the right at any time to modify, alter or amend the Plan <u>in whole or in part by an instrument in writing duly executed by officers of each of the Sponsoring Employers</u> or as reflected in the minutes of FedEx Corporation's board of directors <u>or any committee thereof or as reflected in the minutes of the Committee</u>.

(Doc. 23-7 at 91 (emphasis added)). The 2006 Restated FedEx Plan defines "Employer" as "the Company, FedEx Corporation, and all other Sponsoring Employers, and each of them, which are subsidiary to or affiliated with the Company . . . ." (*Id.* at 36).

Defendants rely upon several different documents in an effort to show that AARC has the requisite discretionary authority when deciding disability appeals. The materials include the July 14, 2008, minutes of the RPIB meeting and an "AMENDMENT TO SERVICE AGREEMENT" (the "2008 Service Amendment") entered into between FedEx and Aetna which memorializes that as of September 1, 2008, Aetna would "[b]e fully responsible for final appeal benefit determinations … for Long Term Disability Plans . . . ." (Doc. 27-4 at 2).[16] The 2008 Service

---

[16]  All page references to Doc. 27-4 correspond with the court's CM/ECF numbering system.

Amendment also "delegates to Aetna discretionary authority to render eligibility and benefit determinations and otherwise interpret the terms of the . . . Long Term Disability Plans on appeal." (Doc. 27-4 at 2).

Defendants also point to the "SECOND AMENDMENT TO THE FEDERAL EXPRESS CORPORATION LONG TERM DISABILITY PLAN" (the "Second FedEx Plan Amendment") which, although not executed by the "Sponsoring Employers" until January 2013 (Doc. 23-7 at 19-26), modifies Section 5.3 of the 2006 Restated FedEx Plan and clarifies "the terms of the Plan to reflect the delegation of fiduciary duty to Aetna to determine claims under Plan that was effective September 1, 2008." (Doc. 23-7 at 2).

More specifically, modified Section 5.3 makes it clear that the Claims Paying Administrator (*i.e.*, Aetna) is now (and since September 1, 2008, has been) the party responsible for deciding appeals of denial of benefits. (Doc. 23-7 at 4). Further, the authority portion of revised Section 5.3 provides:

> (d)   <u>Authority of Claims Paying Administrator</u>. The Claims Paying Administrator shall, subject to the requirements of the Code and ERISA, be empowered to interpret the Plan's provisions in its sole and exclusive discretion in accordance with its terms with respect to all matters properly brought before it pursuant to this Section 5.3, including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan. <u>The determination of the Claims Paying Administrator shall be made</u>

> in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only to a determination by a court of competent jurisdiction that the individual's or committee's decision was arbitrary and capricious.

(Doc. 23-7 at 4-5 (emphasis added)).

Nevertheless, Defendants' reliance upon this Second FedEx Plan Amendment to satisfy their burden of persuasion is not entirely convincing because, at the time that Mr. Oliver's final claims decision was made, this modification was not yet formally in place. Further, the cases cited by Defendants do not concretely establish that bestowing discretionary authority to a claims paying administrator under such unique circumstances is a permissible retroactive amendment under the same type of reasoning used in decisions such as *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1510 (10th Cir. 1996) (upholding amendment which required participants to pay for a portion of their health benefits), *abrogated on other grounds by CIGNA Corp. v. Amara*, ___ U.S. ___, 131 S. Ct. 1866, 179 L. Ed. 2d 843 (2011), *as recognized in Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1295 (10th Cir. 2011) ("The Supreme Court recently rejected *Chiles*' reliance requirement."), and *Smith v. AEGON Companies Pension Plan*, 2013 U.S. Dist. LEXIS 10746 (W.D. Ky. Jan. 25, 2013) (permitting retroactive application of change in choice of forum adopted in 2007 to benefits that had accrued in 2000), and *Dyce v. Salaried Employees' Pension Plan of*

*Allied Corp.*, 15 F.3d 163, 166 (11th Cir. 1994) (permitting retroactive application of amendment impacting pending claims for retirement benefits).

In particular, none of these cases stands for the proposition that the reach of a retroactive delegation of discretionary authority to a claims administrator appropriately extends to a final benefits decision made <u>before</u> that plan was formally amended. Therefore, in the absence of any other plan documents which establish Aetna's discretionary authority <u>prior</u> to its determination of Mr. Oliver's appeal, the court would likely be inclined to use *de novo* review.

However, in this instance, Defendants' universe of plan documents is not limited to the 2006 Restated FedEx Plan or the Second FedEx Plan Amendment. Instead, Defendants have additionally pointed to other plan documents which existed prior to the final decision made on March 12, 2012. Further, unlike the records presented to the court in *Huffstutler v. Goodyear Tire & Rubber Company*, No. 4:11-CV-3325-VEH (Doc. 18) and *Glover v. Amcor Pet Packaging, USA, Inc.*, No. 4:09-CV-65-VEH (Doc. 45),[17] these other plan instruments confirm that discretionary

---

[17] To be clear, in *Huffstutler*, the undersigned did not analyze any language from a summary plan description, because that was not one of the plan documents offered by the defendant to carry its burden. In *Glover*, the undersigned did discuss the discretionary provision included in the summary plan description, and found that the final disability decisonmaker (who was outside counsel for the defendant) did not fall within the scope of that provision.

23

authority was appropriately delegated to the AARC <u>in advance of</u> its decision on Mr. Oliver's appeal.

More specifically, Defendants contend that this court should utilize ERISA's arbitrary and capricious standard because of the language contained in the 2011 summary plan description (the "2011 SPD") and the 2012 summary plan description update (the "2012 Update"). The 2011 SPD replaces all prior versions (Doc. 23-5 at 8)[18] and explains that the "Plan Administrator – and sometimes <u>the claims paying administrator – has discretionary authority</u> to interpret Plan provisions, clarify unclear terms, determine eligibility for benefits and otherwise make all decisions about Plan administration." (Doc. 23-5 at 10 (emphasis added)); (*see also id.* ("For some Plans, FedEx has delegated authority to an insurance company to administer benefit claims under the Plan. . . . Subject to the overall authority of the Plan Administrator, <u>the claims-paying administrator has discretionary authority to interpret Plan provisions and determine benefit claims</u>.") (emphasis added)).

Additionally, the 2012 Update (applicable to benefits being sought effective January 1, 2012 (Doc. 23-6 at 2)),[19] expressly identifies the "Aetna Appeal Review

---

[18] All page references to Doc. 23-5 correspond with the court's CM/ECF numbering system.

[19] All page references to Doc. 23-6 correspond with the court's CM/ECF numbering system.

Committee" (*i.e.*, the previously defined AARC) as the "GROUP RESPONSIBLE FOR FINAL REVIEW" of a disability appeal filed under the Plan. (*Compare* Doc. 23-6 at 25 (indicating "Aetna Appeal Review Committee"), *with* Doc. 23-5 at 58 (indicating "Aetna Appeals Committee")). Therefore, the 2011 SPD in conjunction with the 2012 Update confirm that discretionary review applies to the final denial of Mr. Oliver's long-term disability claim by the AARC on March 12, 2012.

This court's conclusion that the contents of the 2011 SPD and the 2012 Update effectively bestow the AARC with discretionary authority under ERISA is reinforced by the Eleventh Circuit's standard of review reasoning employed in *Cagle*:

> Since there is no conflict of interest in this case, either the *de novo* or the arbitrary and capricious standard applies, depending upon whether the plan documents give the Fund sufficient discretion. The Fund argues that it is provided sufficient discretion to interpret the plan in the Trust Agreement and in the Rules and Regulations. In opposition, both Genesis and Bruner argue that the plan's Summary Plan Description ("SPD"), not other plan documents, must contain the discretionary language in order for the Fund to receive the deference required under the arbitrariness standard. We reject that argument. Both the Supreme Court and this Court have reviewed trust documents and other non-SPD documents in the search for a reservation of discretion for plan administrators or fiduciaries. *See Firestone*, 489 U.S. at 109-13, 109 S. Ct. at 954-55; *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989). *Accord Diaz v. Seafarers Int'l Union*, 13 F.3d 454, 457 (1st Cir. 1994); *Luby v. Teamsters Health, Welfare and Pension Trust Funds*, 944 F.2d 1176, 1180-81 (3d Cir.1991). Accordingly, we look to all of the plan documents to determine whether the plan affords the Fund enough discretion to make the arbitrariness

25

standard applicable.

*Cagle*, 112 F.3d at 1517 (emphasis added).

Here, the position advanced by Mr. Oliver (*i.e.*, a delegation of discretionary authority must appear within the actual plan–as opposed to the summary plan description–in order for it be effective) is the opposite of what the plaintiffs argued in *Cagle*. However, *Cagle*'s overriding principle that no single instrument controls the court's standard of review inquiry still holds. Instead, as *Cagle* confirms, <u>all</u> plan-related documents (that are part of the record) are relevant when the parties disagree over whether *de novo* or discretionary review applies to a disputed ERISA benefits claim.

### C.   Mr. Oliver's Disability Motion is due to be denied and Defendants' Cross Disability Motion is due to be granted.

#### 1.   Mr. Oliver's Long-Term Disability Claim

Turning to the court's initial inquiry under ERISA:

[T]he court reviews the decision by the administrator to determine whether it was "wrong." *Tippitt*, 457 F.3d at 1232; *see also Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1326 (11th Cir. 2001) (quoting *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1566 n.12 (11th Cir.1990)). A decision is "wrong" if, after a review of the decision of the administrator from a *de novo* perspective, "the court disagrees with the administrator's decision." *Williams*, 373 F.3d at 1138 & n.8. The court must consider, based on the record before the administrator at the time its decision was made, whether the court

> would reach the same decision as the administrator. If the court
> determines that the plan administrator was right, the analysis ends and
> the decision is affirmed. *Tippitt*, 457 F.3d at 1232.

*Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246-47 (11th Cir. 2008).

Here, the court concludes that the AARC's final disability determination is *de novo* correct for multiple reasons, including Mr. Oliver's overall failure to objectively establish that the vocational ramifications caused by his impairments satisfied the requirements of the 2006 Restated FedEx Plan's <u>total</u> disability provision, *i.e.*, the inability to work at <u>any</u> job for a minimum of <u>twenty-five hours a week</u> effective as of February 22, 2012. Instead, Mr. Oliver, at best, has established a period of <u>non-permanent</u> total disability under the SSA as of January 17, 2012. (*See, e.g.*, Doc. 23-2 at 21 ("Medical improvement is expected with appropriate treatment."); *id.* ("Consequently, a continuing disability review is recommended in 12 months.")). Importantly (and as the AARC expressly recognized in reviewing Mr. Oliver's appeal), because significant differences exist between the SSA test and that governing the 2006 Restated FedEx Plan, the former falls short of demonstrating that Aetna committed *de novo* error under ERISA.

For example, under step five of the SSA's disability framework, the SSA takes the position that "only an ability to do full-time work will permit the ALJ to render

a decision of not disabled." *Kelley v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999); *see id.* at 1214-15 ("Thus, if the government is correct in its interpretation, a claimant could pass Step Five and be entitled to benefits <u>even though capable of working on a part-time basis</u>.") (emphasis added). Therefore, to what extent a favorable SSA disability decision (which, like Mr. Oliver's, turns on the fifth step of that statute's model) also demonstrates a claimant's inability to work <u>a minimum of twenty five hours a week</u> "in any compensable employment" is inconclusive. (*See* Doc. 23-7 at 42 (defining "Total Disability" under 2006 Restated FedEx Plan)).

Another notable difference between the two disability models is that a fifth-step SSA disability determination is tied to a separate determination of whether a significant number of jobs exist in the national economy which a claimant can perform. In contrast, the availability of jobs (or part-time employment) is not a component of the total disability definition under the 2006 Restated FedEx Plan. Put differently, if a physically-impaired claimant is a capable of working in a sedentary position for twenty five hours or more per week, under the 2006 Restated FedEx Plan it is irrelevant to the disability determination whether a significant number of such sedentary jobs exist.

Additionally, while under the SSA structure the lack of objective medical

evidence does not always disqualify a claimant from being found disabled so long as his subjective allegations of pain are deemed credible, *see, e.g., Francis v. Heckler*, 749 F.2d 1562, 1564 (11th Cir. 1985) ("It is well established in the Eleventh Circuit that pain alone can be disabling, even when its existence is unsupported by objective evidence." (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982))), the 2006 Restated FedEx Plan has a much stricter approach to dealing with subjective complaints of pain.

> <u>Disability or Disabled</u> shall mean either an Occupational Disability or a Total Disability; provided, however . . . such Disability is substantiated by <u>significant objective findings</u> which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities <u>which can be observed apart from the individual's symptoms</u>.

(Doc. 23-7 at 34-35 (emphasis added)); (*see also* Doc. 23-2 at 5 ("**Pain, without significant objective findings, is not proof of disability**." (emphasis in original)). Therefore, in light of the above materially different underpinnings of the SSA's disability determination, Mr. Oliver's SSA award does not constitute objective proof that he is totally disabled under the 2006 Restated FedEx Plan.

The court also concludes that the form filled out by the office of Dr. Lawrence Lemak on December 15, 2011 (Doc. 23-2 at 56) fails to establish that Aetna's decision on Mr. Oliver's appeal was *de novo* wrong. In particular, even though the

box indicating that Mr. Oliver is "unable to work at any compensable employment for a minimum of twenty-five hours a week" is marked (Doc. 23-2 at 56), the underlying treatment records that either immediately precede or coincide with the completion of this form show only that Mr. Oliver is precluded from returning to his former courier position with FedEx. (*See, e.g.*, Doc. 23-2 at 55 ("[I]t's my professional opinion that he will be <u>unable to return to Federal Express as a Courier</u>, secondary to total knee replacement.") (emphasis added)).

Finally, none of the other evidence upon which Mr. Oliver relies nor his rambling judicial estoppel argument raised for the first time in opposition to Defendants' Cross Disability Motion (Doc. 36 at 14-28) persuades this court that Aetna's decision to deny his disability appeal was incorrect. As it pertains to Mr. Oliver's judicial estoppel contentions more specifically, such a theory, which has not been alleged by him in a pleading, is subject to summary judgment for procedural as well as substantive reasons.

From a procedural standpoint, the Eleventh Circuit has made it unmistakably clear that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.

1996)). *Gilmour* dealt with a plaintiff who was attempting to assert a new claim at the summary judgment stage. *Gilmour*, 382 F.3d at 1314-15.

Additionally, a more recent decision by the Eleventh Circuit cites to *Gilmour* and confirms that a district court's consideration of <u>any critical amendment</u> asserted merely as part of the briefing process is disfavored.

> The current practice in some district courts—especially in the summary judgment setting—is to ignore what the respective parties alleged in their complaint and answer and to consider their claims and defenses as depicted in the memoranda they filed in support of or in opposition to a motion for summary judgment. As is the situation here, <u>the claims and defenses presented in the memoranda supporting or opposing summary judgment are not presented in the complaint and answer</u> with the specificity required by the Federal Rules of Civil Procedure and the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); rather, they are presented in a shorthand fashion. The result is that on appeal we have difficulty in determining whether the district court, in granting summary judgment, ruled on the claims and defenses as stated in the complaint and answer or as stated in the memoranda submitted to the court on summary judgment, as if the pleadings had been amended by implied consent.

> We encountered this dilemma most recently in *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S. Ct. 856, 184 L. Ed.2 d 656 (2013). <u>There, in their motion for summary judgment, the plaintiffs sought to eliminate a critical deficiency in the allegations of their amended complaint by including additional facts.</u> The defendants did not object to this tactic on the ground that the plaintiffs were, in effect, seeking to amend their complaint. And the district court, in ruling on the

31

sufficiency of the complaint, appeared to have considered the additional facts as if they had been alleged in the complaint. In affirming the district court's dismissal of the claim at issue, we refused to consider these additional facts, citing precedent that precludes a plaintiff from amending its complaint "through argument at the summary judgment phase of proceedings." *Id.* at 1258 n. 27. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

This court's precedent foreclosed Well–Come's attempt to amend its complaint at the summary judgment stage without seeking leave of court pursuant to Rule 15(a)(2). Accordingly, the District Court should have disposed of Well–Come's claim with a statement that Well–Come failed to establish that ASRRG and ASIS issued a commercial general liability policy and excess/umbrella liability policy to Flintlock LLC, as alleged in paragraphs 6 and 7 of its complaint. We affirm the court's judgment on that ground. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir.2010) ("This court may affirm a decision of the district court on any ground supported by the record.").

*Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28

(11th Cir. 2013) (emphasis added).

Neither Mr. Oliver's complaint (Doc. 1-1 at 4-5) nor his amended complaint

(Doc. 10) advances a theory of judicial estoppel as a means for recovering long-term

disability benefits from Defendants. Thus, *Gilmour* and *Flintlock* procedurally

foreclose Mr. Oliver from belatedly attempting to amend his complaint in such a

critical manner through his briefing.

Mr. Oliver's judicial estoppel theory also misses the mark substantively. In

particular, while Mr. Oliver spends multiple pages of his opposition brief regurgitating portions of the Eleventh Circuit's decision in *Melech v. Life Ins. Co. of North America*, 739 F.3d 663 (11th Cir. 2014) as supportive of his position, he fails to acknowledge a fundamental difference between *Melech* and the record here. In *Melech*, the Eleventh Circuit remanded the case to "LINA . . . to decide Melech's claim with the full benefit of the results generated by the SSA process that it helped to set in motion." 739 F.3d at 676-77. In striking contrast to *Melech*, Aetna's denial of Mr. Oliver's appeal <u>expressly addressed</u> why his favorable SSA award did not warrant a finding that he was totally disabled under the 2006 Restated FedEx Plan. (Doc. 23-1 at 3).

Additionally, *Melech* by no means holds that a claimant's favorable SSA award is determinative of disability under an ERISA plan, as Mr. Oliver seems to suggest. Instead, as the Eleventh Circuit made plainly clear in ordering a remand to the claims administrator for further development:

> In doing so, <u>we do not prejudge the ultimate outcome</u>. LINA may be able to draw a principled distinction between its own standards for granting disability benefits under the Policy and the SSA's standards for awarding SSDI. All we require of LINA is to decide Melech's claim with the full benefit of the results generated by the SSA process that it helped to set in motion.

*Melech*, 739 F.3d at 676-77 (emphasis added). Accordingly, as it pertains to

33

Defendants' *de novo* liability pursuant to § 1132(a)(1)(B) of ERISA, Mr. Oliver's Disability Motion is due to be denied and Defendants' Cross Disability Motion is due to be granted.

Alternatively, even if Aetna committed *de novo* error in deciding Mr. Oliver's appeal, the use of the more lenient discretionary review standard (which the court above has decided appropriately applies in this instance) means that its disability decision is, *a fortiori*, due to be upheld. Regarding this deferential review, which within the Eleventh Circuit applies "both [to] the administrator's plan interpretations and [to] . . . factual determinations[,]" *Blankenship*, 644 F.3d at 1355 n.6, this court's evaluation is limited to whether Aetna's decision was reasonable under the circumstances.[20] Furthermore, "[a]s long as a reasonable basis appears for [the] decision [of the Committee], it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." *White v. Coca-Cola Co.*, 542 F.3d 848, 856 (11th Cir. 2008) (internal quotation marks omitted) (emphasis added) (quoting *Jett*, 890 F.2d at 1140).

---

[20]   Importantly, other than repeatedly referencing the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn* (discussed *supra*) within his various briefs, Mr. Oliver has failed to articulate any convincing argument substantiated with underlying evidence that a conflict of interest of the part of Aetna is a factor for the court to consider here. Instead, the 2006 Restated FedEx Plan makes it clear that the FedEx Plan is funded by a trust established and maintained by FedEx (Doc. 23-7 at 70), and not by an underlying policy of insurance issued by Aetna.

As the Eleventh Circuit has explained regarding reasonableness:

> Doyle argues that the district court erred in finding that Liberty Life's denial of her claim for disability benefits was reasonable. Specifically, she argues that it was unreasonable for Liberty Life not to consider her subjective claims of pain and suffering, which she argues are substantiated by her fibromyalgia diagnosis.
>
> Liberty Life considered Doyle's medical records and employed the services of two independent physicians to review those records. It concluded that she was still able to perform the duties of her "Own Occupation," and so did not satisfy the prerequisite for obtaining LTD benefits under the ChoicePoint policy. We conclude that it was not unreasonable for Liberty Life to disregard Doyle's complaints of intangible pain and suffering. Under ChoicePoint's policy, a plan beneficiary must provide proof that she is disabled in order to obtain LTD benefits. The policy defines "proof" as including "chart notes, lab findings, test results, x-rays and/or other forms of *objective medical evidence* in support of a claim for benefits." (R.2-12 at 9) (emphasis added). Therefore, it was reasonable for Liberty Life to rely only on objective medical evidence supporting Doyle's claim, evidence which Liberty Life's reviewing physicians found lacking. *See, e.g.*, R.1-12 at 279 (statement of Liberty Life's reviewing physician, Dr. Silver, that Doyle's complaints "are unsubstantiated by objective clinical orthopedic findings"); R.2-12 at 104 (statement of Liberty Life's reviewing physician, Dr. Truchelut, that Doyle's "subjective reports are disproportionate to the physical, radiological, laboratory, and neurodiagnostic" records).
>
> After reviewing the record, we find no error in the district court's determination that Liberty Life's decision was reasonable.

*Doyle*, 542 F.3d at 1358 (emphasis by underlining added). The plan language at issue

in *Doyle* is worded similarly to that utilized in the 2006 Restated FedEx Plan–

objective proof is required to substantiate total disability. Therefore, guided by *Doyle*, and based upon the inadequacies identified by the court with the documentation relied upon by Mr. Oliver in an effort to substantiate his claim on a *de novo* basis, Aetna reached a reasonable determination that he did not objectively satisfy the definition of total disability under the 2006 Restated FedEx Plan.

### 2.     FedEx Plan's Counterclaim on Offset Calculation

Defendants additionally seek summary judgment on the FedEx Plan's counterclaim regarding the offset calculation which is also pled as Count II of Mr. Oliver's amended complaint. (Doc. 10 at 3 ¶¶ 1-3). The parties agree that the 2006 Restated FedEx Plan contains a provision that requires a claimant to reduce any long-term benefits received by income received from other sources, expressly including the SSA, which has been triggered by Mr. Oliver's SSA disability award. (Doc. 23-7 at 59-60, 62). Their disagreement arises over how much Mr. Oliver should reduce his long-term occupational disability payment made to him under the 2006 Restated FedEx Plan in light of his SSA award.

On or about March 29, 2012, Mr. Oliver sent a refund check made payable to FedEx in the amount of $23,508.00 in connection with the proceeds he received from

the SSA. (Doc. 23-9 at 78).[21] Defendants maintain that the FedEx Plan is owed an additional amount of $5,912.63, which represents the amount that Mr. Oliver paid to his attorney in connection with the SSA award subject to a 2012 tax adjustment. (Doc. 23-8 at 3); (*see also* Doc. 33-1 at 3 ¶ 6 (substantiating Mr. Oliver's still outstanding setoff amount through declaration of Latona J. McGee, FedEx's HR Advisor in the Benefits Planning and Management Department)).[22] In particular, Defendants point out that the 2006 Restated FedEx Plan makes no exception for fee or cost-sharing agreements that a claimant may have separately negotiated with his SSA counsel. (Doc. 23-7 at 59-63).

Mr. Oliver's opposition brief lacks <u>any</u> discussion which counters Defendants' offset position. In particular, Mr. Oliver does not even include a passing reference to this claim in his conclusion.[23] (Doc. 36 at 44). Thus, in light of this omission, Mr. Oliver either has abandoned Count II of his complaint and/or has conceded that the

---

[21] All page references to Doc. 23-9 correspond with the court's CM/ECF numbering system.

[22] All page references to Doc. 23-8 and Doc. 33-1 correspond with the court's CM/ECF numbering system.

[23] The court acknowledges that, within the factual section of his opposition, Mr. Oliver asserts that, "[a]s a matter of equity, Oliver is entitled to a credit of $5,912.63–the amount of the fee paid to his Social Security attorney." (Doc. 36 at 6 ¶ 29). Mr. Oliver also later laments that "Aetna refused to give Oliver credit for the attorney fee . . . ." (Doc. 36 at 13 n.2). However, Mr. Oliver offers no authority in support of either one of these undeveloped points and, consequently, such meager efforts to oppose are entirely ineffective. *See Flanigan's* and *Ordower*, *infra* at 42-43.

FedEx Plan is entitled to summary judgment on its setoff counterclaim. *See, e.g., Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994))); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment).

Accordingly, the counterclaim portion of Defendants' Cross Disability Motion is due to be granted.

### 3.    Aetna's Independent Basis for Summary Judgment

Aetna separately argues in Defendants' brief in support of their Cross Disability Motion that, as merely a claims administrator, it is not a proper party defendant under 29 U.S.C. § 1132(a)(1)(B). (Doc. 32 at 20-23). Instead, Aetna maintains the only appropriate real party in interest in connection with Mr. Oliver's ERISA benefits claim is the FedEx Plan, which entity Mr. Oliver has separately sued.

In his opposition, Mr. Oliver never acknowledges this contention distinctly raised by Aetna, much less addresses the on-point cases which Aetna has cited. Accordingly, Aetna is independently entitled to summary judgment on its improper party defense due to Mr. Oliver's abandonment and/or concession of this issue.

### D. Mr. Oliver's Motion To Add is due to be denied and alternatively is due to be termed as moot.

Mr. Oliver maintains in his Motion To Add that six different categories of documents relating to his disability claim need to be added to the administrative record because they reflect "facts known by Aetna but which are not accurately reported in the Administrative Record." (Doc. 25 at 3). Two of these (*i.e.*, Doc. 25-1 (letter explaining distinction between occupational and total disability under the 2006 Restated FedEx Plan), and Doc. 25-3 (executed "AUTHORIZATION TO SHARE AND USE MEDICAL INFORMATION"), predate the AARC's final disability determination made on March 12, 2012. One of these exhibits is undated. (Doc. 25-2 (uncompleted form relating to consent for release of information from the SSA)).

The remaining three exhibits (*i.e.*, Doc. 25-4, Doc. 25-5, and Doc. 25-6) contain correspondence from Mr. Oliver's attorney which post-date the AARC's key administrative decision. Doc. 25-5 additionally attaches treatment records from Rehab Partners spanning from December 22, 2003, until January 14, 2011. Doc. 25-6

encloses records from Tennessee Valley Pain Consultants relating to an epidural that

Mr. Oliver received for pain on May 20, 2010.

Defendants counter with respect to Mr. Oliver's Motion To Add that:

[Mr. Oliver] seems to be incorrectly conflating the "claim file" with the Administrative Record that was considered during the decision-making process. [Mr. Oliver] improperly moves to add documents that he never submitted during the pendency of his claim for disability benefits and also failed to submit during the appeal process. [Mr. Oliver] also moves to "add" documents that are actually already contained in the "claim file."

(Doc. 34 at 1).

The Eleventh Circuit has made it clear that, when evaluating the correctness

of a claims administrator's determination under an arbitrary and capricious standard,

the court is "limited to the record that was before [that entity] when it made its

decision." *Jett*, 890 F.2d at 1139 (citing *Brown v. Retirement Committee of Briggs &*

*Stratton Retirement Plan*, 797 F.2d 521, 532 (7th Cir. 1986)); *see also Lee v. Blue*

*Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1550 (11th Cir. 1994) ("Application of

the arbitrary and capricious standard requires us to look only to the facts known to the

administrator at the time the decision was made to deny Lee coverage." (citing *Jett*));

*cf. Blank v. Bethlehem Steel Corp.*, 926 F.2d 1090, 1093 (11th Cir. 1991) (referencing

factors applicable to "determining whether the contested [plan] interpretation was

made rationally and in good faith").

While Mr. Oliver acknowledges the binding holdings contained in these legal authorities, his briefing, nonetheless, fails to establish how these documents which he seeks to add satisfy the Eleventh Circuit's "facts known at the time of the decision" standard. Mr. Oliver also fails to clarify why, some or even if all such documents meet this test, the specific relief he seeks (*i.e.*, adding these items to Aetna's administrative record) is appropriate, especially when the record before the court on summary judgment already contains them.

For example, while Mr. Oliver cites to the *Blank* and *Harris v. Pullman Standard, Inc.*, 809 F.2d 1494 (11th Cir. 1987) decisions as supporting his position, the *Blank* panel merely assumed without deciding that certain post-decision records were relevant to its arbitrary and capricious review despite the "facts known" test, *see id.* at 1094 n.4 ("We assume without deciding that two of these sales, which occurred after the transaction at issue here, nevertheless are relevant to whether the Board acted arbitrarily at the time it denied benefits to the plaintiffs."), and *Harris* does not mention the standard at all.

Additionally, while the two non-binding cases cited by Mr. Oliver stand for the general proposition that a reviewing court may, under certain circumstances, consider

evidence outside of the administrative record when evaluating whether an administrator acted arbitrarily in denying a claim (Doc. 25 at 3-4, 5-6), neither opinion indicates that seeking to add those documents to the administrative record is an appropriate or, much less, a necessary action–the reviewing court instead may simply consider the impact of such evidence on the issue of arbitrariness without undergoing this administrative procedural step.

Further, Mr. Oliver sweepingly and unhelpfully asserts in his reply brief that (i) "[t]he claim file and the Administrative Record are the same[;]" (ii) "[t]he claim file or administrative record shall include the entire Record[;]" (iii) "Defendants have no right to pick and choose what belongs in the Record[;]" and "[t]he file is incomplete." (Doc. 43 at 2, 3). However, Mr. Oliver never links these statements to any cases which establish their validity as guideposts for deciding ERISA benefit disputes, much less that the relief he seeks is warranted by his numerous conclusory legal assertions.

In sum, Mr. Oliver's Motion To Add is due to be denied as perfunctorily made and underdeveloped. *Cf. Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument);

*Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Alternatively, Mr. Oliver's Motion To Add is also due to be termed as moot. More specifically, even when considering all the documents which Mr. Oliver seeks to add to the administrative record as "facts known" to Aetna, the court still, nevertheless, concludes that the final decision made by Aetna (through the AARC) that Mr. Oliver lacked objective proof to substantiate total disability under the 2006 Restated FedEx Plan for the time period beginning February 22, 2012, and forward, is both *de novo* correct and reasonable.

### E.    Mr. Oliver's Compel Motion is due to be denied.

Mr. Oliver's Compel Motion seeks to obtain discovery-related information from Defendants. Assuming without deciding that ERISA substantively entitles Mr. Oliver to Defendants' creation of a log of omitted items (which he has vaguely described as missing), procedurally his Compel Motion is flawed because he ignores the impact that Rule 16 has on it.

More specifically, on December 13, 2013, the court entered a scheduling order (Doc. 17), which expressly provides that "all discovery must be commenced in time to be completed by **April 30, 2014**." (*Id.* at 1 (emphasis in original)). The scheduling

order further states:

> Any requests for extension of any deadlines must be filed at least **five days prior to that deadline** to be considered. **Good cause must be shown for the extension of any deadline**. Good cause includes a showing of what discovery, etc., has already been completed and precisely <u>why</u> the deadlines cannot be met.

(Doc. 17 at 2 (emphasis in original)).

Even though Mr. Oliver's Compel Motion <u>post-dates</u> the parties' discovery completion deadline of April 30, 2014, <u>by close to 4 months</u>, Mr. Oliver does not even acknowledge, much less separately seek to modify the scheduling order or otherwise demonstrate good cause for extending the discovery deadline for the production that he belatedly seeks. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); *see also Perez v. Miami-Dade County*, 297 F.3d 1255, 1263 n.21 (11th Cir. 2002) ("Whether a motion was filed timely and is appropriate under a pretrial order is a question left to the district court's discretion." (citing *Spiller v. Ella Smithers Geriatric Ctr.*, 919 F.2d 339, 343 (5th Cir. 1990))); *cf. Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) ("<u>And though the court had the authority to grant a *post hoc* extension of the discovery deadline for good cause</u>, it was under no obligation to do so; in fact, we have often held that a district court's decision to hold

44

litigants to the clear terms of its scheduling orders is not an abuse of discretion."
(emphasis added) (citing *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.*, 389
F.3d 1339, 1348-49 (11th Cir. 2004))); *cf. also Bearint*, 389 F.3d at 1349 ("Given the
wide latitude the district court has to exclude untimely submissions, we cannot say
that it abused its discretion to exclude this [expert] report.").

The failure of Mr. Oliver to even mention Rule 16's good cause standard is
significant because, as a result, he has not even triggered a consideration of the
disputed discovery issue. As the United States District Court for the Southern District
of Alabama has observed:

> "Judges are not like pigs, hunting for truffles buried in briefs." *Smith v.
> Secretary, Department of Corrections*, 572 F.3d 1327, 1352 (11th Cir.
> 2009). An issue must be "fairly presented" in order to trigger
> consideration, and a glancing reference without discussion or legal
> authority does not meet that standard. *Id.* As the Court has previously
> noted, (Doc. 110 at 2), "[t]here is no burden upon the district court to
> distill every potential argument that could be made based upon the
> materials before it on summary judgment." *Resolution Trust Corp. v.
> Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

*Amazing Grace Bed & Breakfast v. Blackmun*, No. 09-0298-WS-N, 2011 WL 606126,
at *3 (S.D. Ala. Feb. 11, 2011). Therefore, similar to *Amazing Grace*, because Mr.
Oliver has not "fairly presented" to the court why he should be entitled to obtain
untimely discovery from Defendants, the court will not speculate as to any possible

scenarios under which he might have met Rule 16's good cause standard.

Accordingly, for all these reasons, Mr. Oliver's Compel Motion is due to be denied.

**F.    Mr. Oliver's Strike Motion is due to be termed as moot.**

In his Strike Motion, Mr. Oliver seeks to preclude from the record several documents offered by Defendants to establish the appropriate standard of review for this court to apply. These documents all relate to the handling of long-term disability appeals under the Plan and include the FedEx inter-office memorandum dated June 12, 2008 (Doc. 27-1); the FedEx inter-office memorandum dated July 9, 2008 (Doc. 27-2); the minutes of the RPIB meeting held on July 14, 2008 (Doc. 27-3); and the 2008 Service Amendment. (Doc. 27-4).

Mr. Oliver contends that because these records were not identified as part of Defendants' initial disclosures under Rule 26, Defendants are precluded under Rule 37(c) from relying upon such evidence in opposition to his SOR Motion. In opposition, Defendants initially counter that, because Mr. Oliver's complaint lacks any allegations about which standard of review applies, Defendants did not appreciate the relevance of these documents until after the filing of Mr. Oliver's SOR Motion. Defendants also respond that as this case is more akin to "an action for review of an

administrative record[,]" the lawsuit is "exempt" from the requirement to exchange initial disclosures. Fed. R. Civ. P. 26(a)(1)(B)(i).

Based upon its analysis of Mr. Oliver's SOR Motion, however, the court does not need to reach any of the contested matters at stake in the Strike Motion. More specifically, even in disregarding those pieces of evidence challenged by Mr. Oliver, the court's conclusion reached regarding arbitrary and capricious review would remain unchanged due to the discretionary power unambiguously bestowed to the AARC by way of the preexisting 2011 SPD and 2012 Update. *Cf. McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir. 1985) ("ERISA provides that the summary shall be an accurate and comprehensive document that reasonably apprises the employees of their rights under the plan."); *id.* ("As a Southern Life employee, McKnight was justified in relying on the summary booklet to determine his pension rights."). Accordingly, Mr. Oliver's Strike Motion is due to be termed as moot.

## V.    CONCLUSION

In sum, (1) Mr. Oliver's SOR Motion is due to be denied; (2) Mr. Oliver's Disability Motion is due to be denied; (3) Defendants' Cross Disability Motion is due to be granted; (4) Mr. Oliver's Motion To Add is due to be denied and alternatively

is due to be termed as moot; (5) Mr. Oliver's Strike Motion is due to be termed as moot; and (6) Mr. Oliver's Compel Motion is due to be denied. The court will enter a separate final judgment order consistent with this memorandum opinion.

   **DONE** and **ORDERED** this 27th day of October, 2014.

                     _____

                     **VIRGINIA EMERSON HOPKINS**

                     United States District Judge